UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID JAMES REISCHAUER,

                Plaintiff,

Case No. 4:04-cv-42

v.

Hon. Gordon J. Quist

GILBERT R. JONES, *et al.*,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on defendant's motion for summary judgment (docket no. 48).

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). "[T]o state a claim under section1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the 'Constitution and laws' of the United States, and (2) plaintiff must show that the defendant deprived him of this federal right 'under color of law.'" *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988).

Plaintiff alleges that the prison chaplain, defendant Jones, violated his rights under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb *et seq.*, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq.*, and

the First and Fourteenth Amendments.[1]   Plaintiff claims that while he was housed in protective custody at the Kinross Correctional Facility (KCF) from October 21, 2003 through January 16, 2004, defendant Jones knowingly and willfully denied plaintiff's repeated requests for Islamic services and Islamic religious books that the Muslim Brotherhood have in their religious library.  Compl. at 4-A. Plaintiff alleges that defendant's actions "did force the plaintiff to break the laws of Islam regarding the holy month of Ramadan, and the weekly Jumu-ah service that Allah commands to be followed by those who [believe] in the teachings of Islam as the plaintiff [does]."  *Id.*   Plaintiff also alleges that on December 8, 2003 he was told to kite the chaplain to request religious books from the Muslim Brotherhood's library, that he kited the chaplain on December 11, 2003 but never received a response to his request.  Compl. at 4-B.

In his response to defendant's motion for summary judgment, plaintiff voluntarily dismissed his claims under RFRA and RLUIPA.  Plaintiff's Response at 4 (docket no. 52). Accordingly, plaintiff has three First Amendment claims remaining.  First, that he was denied the opportunity to attend group religious services.  Second, that he was denied the opportunity to participate in the Ramadan fast.  Third, that  he was denied Islamic religious books.[2]  Defendant contends that plaintiff's remaining claims are barred by qualified immunity.

---

[1] The court previously dismissed plaintiff's claims against defendants Harrington, Olson, Metrish, Green, LaVigne, Davis and Hoornstra.  *See* Order, June 4, 2004.

[2] In his grievance, plaintiff also claims that he was wrongfully denied a Ramadan "fast breaking bag."  *See* Step I Grievance attached to Compl.  However, plaintiff does not assert this claim in his complaint.

2

## I.       Standard of review

Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201; 121 S. Ct. 2151, 2156 (2001).  Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818; 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341; 106 S. Ct. 1092, 1096 (1986).

The Sixth Circuit has applied a three-step inquiry in evaluating a qualified immunity defense.

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal quotations omitted).  The issue of qualified immunity is essentially a legal question to be decided by the court.  *Chappel v. Montgomery County Fire Protection  District No. 1,* 131 F.3d 564, 573 (6th Cir. 1997); *Rought v. Porter*, 965 F. Supp. 989, 992 (W.D. Mich. 1996).  The district court must view the facts in the light most favorable to the nonmoving party.  *Dickerson v. McClellan*, 101 F.3d 1151, 1154 n.2 (6th Cir. 1996).  If genuine issues of material fact exist as to an issue on which the question of immunity

turns, summary judgment is improper. *Dickerson*, 101 F.3d at 1158*; Noble v. Schmitt*, 87 F.3d 157 (6th Cir. 1996); *Buckner v. Kilgore*, 36 F.3d 536 (6th Cir. 1994).

All of plaintiff's claims involve an alleged violation of the First Amendment. "The irreducible core of the first amendment guarantee of the right of free exercise of religious beliefs is the right to practice privately any religion." *Walker v. Mintzes*, 771 F.2d 920, 930 (6th Cir. 1985). It is well established that prisoners do not lose their First Amendment rights by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972). Convicted prisoners retain all First Amendment rights not inconsistent with their status as prisoners. *See Burton v. Nault*, 902 F.2d 4 (6th Cir.1990). The rights are not absolute, however, and may be subjected to reasonable restrictions and limitations as necessitated by the circumstances of prison life. *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979)*; see also Abdur-Rahman v. Michigan Dept. of Corrections,* 65 F.3d 489, 491 (6th Cir. 1995). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89; 107 S. Ct. 2254, 2261 (1987).

## II. Discussion

### A. No constitutional violation occurred in denying plaintiff the right to attend group religious services.

First, defendant did not violate plaintiff's constitutional rights when plaintiff was prevented from attending group religious meetings and group celebrations of the breaking of the Ramadan fast. At the time of these events, plaintiff was placed in protective segregation which "is a unit which provides physical separation of prisoners from the general population in order to protect them from harm by other prisoners." Michigan Department of Corrections (MDOC), Policy Directive 04.05.120 ¶ H. Attendance at group religious services is addressed at Policy Directive

4

04.05.120 ¶ Y, which provides in pertinent part as follows:

> In addition to items and privileges identified in Paragraph W, a prisoner classified to protective segregation shall be permitted all of the following at times and locations which do not allow contact with general population prisoners: . . .

> 6.       Religious programming, which shall include group religious services to the extent feasible.

Policy Directive 04.05.120 ¶ Y.6. (emphasis added).

In his October 14, 2003, memorandum, defendant stated that prisoners in protective segregation were not allowed to attend group functions, but that they could eat their meals at the times specified by the KCF Muslim Brotherhood.  *See* Muslim Brotherhood Ramadan Proposal (8/31/03) attached to defendant's Brief at Exh. N; MDOC Memorandum (10/14/03) attached to defendant's Brief as Exh. O.[3]  Defendant contends that this policy was part of a valid penological objective and did not prevent plaintiff from practicing his religion.  The court agrees.  Plaintiff's classification in protective custody presented a sufficient basis for defendant to preclude him from attending group religious services with the general population.  "Prison officials have a recognized need to manage their prisons and control the movement of the inmate population in accordance with staffing and security issues."  *Fisher v. McGinnis*,  No. 00-1155, 2000 WL 1828486 at *2 (6th Cir. Dec. 5, 2000), *citing Turner*, 482 U.S. at 89 and *Spies v. Voinovich*, 173 F.3d 398, 403-04 (6th Cir.1999).   Furthermore, "[t]he courts have consistently held that when prison officials offer evidence that security concerns prevent them from providing congregate religious services to inmates in administrative segregation, the deprivation is not violative of the first amendment so long

---

[3] The KCF Muslim Brotherhood's proposal for Ramadan requested two meals a day for the entire 30 days of the fast, to be served in the morning at about 5:15 a.m. (before dawn) and 6:30 p.m. (after sunset). *See* Muslim Brotherhood Ramadan Proposal.

as the inmates' rights of conscience are not infringed and they can request individual religious counseling." *Walker*, 771 F.2d at 930.  Defendant's stated policy, that prisoners in protective custody could not attend group religious services with the general population, did not violate the First Amendment.  Accordingly, plaintiff has failed to demonstrate a constitutional violation with respect to his group religious service claim.

### B.    Opportunity to participate in Ramadan fast

### 1.    Constitutional violation

Next, plaintiff alleges that he was forced to break the dietary laws of Ramadan.  The MDOC Memorandum (10/14/03) specifically allowed prisoners in segregation to participate in the fast.  Denying plaintiff the right to participate in this religious observance would violate his First Amendment rights.   *See Ford v. McGinnis*, 352 F.3d 582, 597 (2nd Cir. 2003) (prisoner has a clearly established right to a diet consistent with his or her religious scruples); *Whitney v. Brown*, 882 F.2d 1068, 1078 (6th Cir. 1989) (permitting annual Passover Seders for Jewish inmates at MDOC).

### 2.    Clearly established constitutional right

Next, the court must consider whether this right was clearly established at the time of the incident, i.e., that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987).  The Supreme Court has further instructed that "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*  The constitutional right of inmates to participate in religious meals or fasts was well-established when

6

these incidents occurred in 2003.  *See Whitney*, 882 F.2d at 1078 (applied rule to religious dietary restrictions in 1989); *Kahane v. Carlson*, 527 F.2d 492, 495 (2nd Cir. 1975) (prisoner has a clearly established right to a diet consistent with his or her religious scruples).

### 3.    Was defendant objectively unreasonable?

The final question is whether plaintiff has alleged facts sufficient to demonstrate that defendant's actions were objectively unreasonable in light of the clearly established constitutional rights. In his "supplement affidavit in opposition," plaintiff includes copies of both his first and second set of admission requests.  *See* Supplement affidavit (docket no. 59).  These admission requests have been deemed admitted due to defendant's failure to file any response to the requests and are conclusively established.  *See* Order, 11/29/04 (docket no. 57);  Fed. Rules Civ. Proc. 36(b) (provides that  "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission").  These admissions can establish the factual basis to support a motion for summary judgment.  *See* Fed. Rules Civ. Proc. 56(c) (stating that "admissions on file" may be appropriate basis for granting summary judgment); *McCann v. Mangialardi,* 337 F.3d 782, 788 (7th Cir. 2003); *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("[s]ince Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record);  *Lovejoy v. Owens*, No. 94-4224, 1996 WL 287261 at *2-3 (6th Cir. May 28, 1996).  *See also, United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("[a]ffidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions").

Three of the admissions, nos. 3, 4 and 5, are relevant to the Ramadan fast:

3.      Plaintiff requested to partake in the fast of Ramadan for the year of 2003 while housed at KCF.

4.      Plaintiff was not aloued [sic] to partake in the fast of Ramadan for the year 2003 while housed at KCF.

5.      Plaintiffs [sic] name was removed against his whishes [sic] from the list of inmates who would be partakeing [sic] in the fast of Ramadan for the year of 2003 at KCF.

First set of admission requests (docket no. 57).

Defendant's admissions establish that plaintiff was not allowed to participate in the 2003 Ramadan fast and removed from the list of Ramadan participants against his wishes. However, factual issues exist with respect to whether defendant was responsible for or acted unreasonably in removing plaintiff's name from the list of Ramadan participants. For example, defendant's affidavit indicates that he received an e-mail from ARUS Harrington that plaintiff wished to be removed from Ramadan meal and that instructions from the KCF Muslim Brotherhood's proposal for Ramadan 2003 did not include "fast breaking bags" as requested by plaintiff. Jones Aff. at ¶¶ 9, 10, 11, 12, 15. Assuming that defendant relied on Harrington's e-mail and the Muslim Brotherhood's instructions, then factual questions exist such as (1) whether defendant acted reasonably in removing plaintiff from the 2003 Ramadan fast and (2) whether defendant acted reasonably in addressing plaintiff's claim for a fast breaking bag. Accordingly, because factual issues exist, defendant's motion for qualified immunity should be denied with respect to the allegation that he prevented plaintiff from participating in the Ramadan fast.

#### C.       **Plaintiff's request for religious books**.

Finally, plaintiff contends that defendant violated his First Amendment rights by denying his requests for Islamic religious books in the Muslim Brotherhood's religious library. Compl. at 4-A.   The MDOC allows inmates to receive religious reading material through the mail or from the institutional chaplain.  *See* MDOC Policy Directive 05.03.150 at ¶ XX.  In his Step I grievance, plaintiff contends that he sent numerous requests to the chaplain for religious books in November 2003.  *See* Step I grievance attached to Compl. In his affidavit, defendant states that on November 13, 2003 he responded to plaintiff stating that "any books you wish will need to be ordered through approved vendors. Group Books [i.e., those belonging to the Muslim Brotherhood] do not go to A-3 [plaintiff's housing unit]."  Memorandum (11/13/03) attached to defendant's Brief as Exh. H.  Defendant sent plaintiff a second response on November 25, 2003, advising plaintiff that "as for the books, you can order any book which meets mail policies and is from one of the approved vendors and or publishers."   Memorandum (11/25/03) attached to defendant's Brief as Exh. M. Plaintiff does not dispute that he received two communications from defendant in November 2003.

While plaintiff's Step I grievance states that he did not receive any responses from defendant in November 2003, he does not raise this issue in his Complaint. Rather, plaintiff claims that defendant did not comply with a directive set forth in the response to his Step I Grievance, which stated in pertinent part, "if Prisoner Reischauer is interested in one of the books in the Religious library, he is instructed to kite the Chaplain and the book will be sent to Protection for Prisoner Reischauer to read."   Step I Grievance Response.  *See also* Compl. at 4-B.  Plaintiff contends that,  pursuant to the instructions in the Step I Response,  he sent defendant kites on

December 11 and 29, 2003, requesting the KCF Muslim Brotherhood Book Index so he could order books to read.  *See* letters (12/11/03 and 12/29/03) attached to plaintiff's Response as Exh. 4.

Two of plaintiff's admission requests, nos. 1 and 2, are relevant to the religious book issue:

> 1.    Plaintiff was not provided with any religious services, or religious books to read while housed on A-3 protection at KCF.
>
> 2.    Plaintiff requests [sic] a religious service and religious books to read while housed on A-3 protection at KCF a number of times.

First admission request (docket no. 57).   These requests have been deemed admitted.  *See* Order, 11/29/04.[4]

Plaintiff's admission requests establish that he did not have any religious books to read while in protected custody and that he requested books a number of times.  Depriving petitioner of religious materials could result in a First Amendment violation.  *See generally*, *Cruz*, 405 U.S. at 322 n.2.   However, these admissions do not address the factual issue of whether defendant received plaintiff's requests for books submitted on December 11th and 29th.   In his affidavit, defendant states that did not receive any kites from plaintiff in December 2003.  Defendant's Aff. at ¶ 16.  This factual issue is relevant to the question of whether a constitutional violation occurred. If defendant did not receive any requests for books in December 2003, then he did not unreasonably deprive plaintiff of religious reading material in violation of the First Amendment.  The existence

---

[4] Plaintiff's Response included the two-paragraph affidavit of non-party David Lyons, another inmate at KCF, stating that since Lyons has been housed in protective custody there has been "no religious services provided to any inmates" and "no religious reading material provided to any inmate."  Lyons Aff. attached to Response as Exh. 6.  The court does not view this affidavit as evidence that defendant denied plaintiff access to religious books: the affidavit does not relate to plaintiff, contains no time frame, and is not in the form as required under Fed. Rules Civ. Proc. 56(e).

10

of these factual issues preclude the court from granting defendant's motion for summary judgment on grounds of qualified immunity with respect to plaintiff's claim that defendant denied his request for religious books.  *See Dickerson*, 101 F.3d at 1158*; Noble*, 87 F.3d 157; *Buckner*, 36 F.3d 536.

**Conclusion**

For the reasons set forth above, defendant's motion for summary judgment (docket no. 48) will be **GRANTED** with respect to plaintiff's claims brought pursuant to RFRA and RLUIPA, and with respect to plaintiff's claim that defendant violated his First Amendment right to attend group religious services.  However, defendant's motion will be **DENIED** with respect to plaintiff's claim that defendant violated his First Amendment right to participate in the Ramadan fast and to obtain Islamic religious books.  An order consistent with this opinion will be entered.

Dated:     August 24, 2005                   /s/ Gordon J. Quist
                                        GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE